### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIFFINEY GETTEMY, individually
and on behalf of all others similarly situated,

Plaintiff,
v.

THE FOUNTAINS AT LATROBE
LUXURY, THE FOUNTAINS GROUP, and
JOHN DOE FOUNTAINS ENTITIES 1-10,

Defendants.

Civil Action No.

26-1621

**JURY TRIAL**
**DEMANDED**

## COLLECTIVE ACTION AND CLASS ACTION COMPLAINT

Plaintiff Tiffiney Gettemy, individually and on behalf of all others similarly situated, by and through her undersigned counsel, files this Collective Action and Class Action Complaint against Defendants The Fountains at Latrobe Luxury, The Fountains Group, and John Doe Fountains Entities 1-10, and alleges as follows:

### SUMMARY

1. Plaintiff brings this collective action and class action to recover unpaid regular wages, unpaid overtime wages, liquidated damages, attorney fees, costs, and related relief arising from Defendants' systemic failure to pay hourly, non-exempt employees for all compensable work.

2. Defendants own, operate, manage, or control personal care and memory care facilities in Pennsylvania under The Fountains and The Gardens names, including facilities in Latrobe, DuBois, and Indiana.

3. Plaintiff worked for Defendants as an hourly, non-exempt employee at The Fountains at Latrobe.

4. Plaintiff and similarly situated hourly employees performed resident care, nursing, aide, kitchen, housekeeping, and facility support work that was necessary to Defendants' personal care and memory care operations.

5. Defendants used a common timekeeping and payroll system that automatically deducted 30-minute meal periods from employees' recorded compensable time.

6. In practice, Plaintiff and similarly situated employees were frequently unable to take uninterrupted, duty-free meal periods because resident care requirements, staffing levels, and facility coverage obligations required them to remain on duty, stay available, respond to residents, and continue working.

7. Defendants nevertheless deducted those meal periods from compensable time and failed to pay employees for work performed during those deducted periods.

8. Defendants also failed to pay Plaintiff and similarly situated employees for all pre-shift and post-shift work, including time spent clocking in early, preparing for resident care work, finishing assigned duties, completing handoff or coverage obligations, and staying late after scheduled shifts.

9. Plaintiff typically lost approximately one hour of pay per shift through the combined effect of automatic meal deductions, pre-shift work, and post-shift work.

10. Plaintiff worked 8-hour, 12-hour, and 16-hour shifts, regularly worked 3 to 5 shifts per week, and worked more than 40 hours in one or more workweeks.

11. The unpaid time caused Plaintiff and similarly situated employees to be underpaid regular wages and overtime wages.

12. Defendants' wage practices were centralized, common, and applied to multiple hourly employees across one or more Fountains and Gardens facilities.

13. Plaintiff brings Count I as a collective action under the Fair Labor Standards Act, 29 U.S.C. Section 216(b), and brings Counts II and III as Rule 23 class claims under the Pennsylvania Minimum Wage Act and the Pennsylvania Wage Payment and Collection Law.

**JURISDICTION AND VENUE**

14. This action arises under the Fair Labor Standards Act, 29 U.S.C. Section 201, et seq. ("FLSA"), the Pennsylvania Minimum Wage Act, 43 P.S. Section 333.101, et seq. ("PMWA"), and the Pennsylvania Wage Payment and Collection Law, 43 P.S. Section 260.1, et seq. ("WPCL").

15. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. Section 216(b).

16. This Court also has federal question jurisdiction pursuant to 28 U.S.C. Section 1331.

17. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. Section 1367 because those claims arise from the same employment relationship, wage practices, timekeeping practices, payroll practices, and unpaid work alleged in support of Plaintiff's FLSA claims.

18. Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b) because a substantial part of the events and omissions giving rise to these claims occurred in this District, including at The Fountains at Latrobe in Westmoreland County, Pennsylvania.

19. At all relevant times, Defendants were employers engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

20. At all relevant times, Defendants had employees engaged in commerce, used interstate communications and payment systems, handled goods and materials that moved in interstate commerce, used payroll and timekeeping systems connected to interstate commerce, and operated personal care and memory care facilities with an annual gross volume of sales or business done exceeding $500,000.

21. At all relevant times, Defendants were employers within the meaning of the PMWA and WPCL.

**PARTIES**

22. Plaintiff Tiffiney Gettemy is an adult individual and resident of Pennsylvania.

23. Plaintiff resides in Westmoreland County, Pennsylvania, within the Western District of Pennsylvania.

24. Plaintiff worked for Defendants as an hourly, non-exempt employee beginning in or around November 2025 and continuing until in or around June 2026.

25. Plaintiff worked at The Fountains at Latrobe, located at 317 Starlight Court, Latrobe, Pennsylvania 15650.

26. Defendant The Fountains at Latrobe Luxury is the payroll name shown on Plaintiff's pay records and, upon information and belief, is an entity, trade name, or operational name through which Defendants employed Plaintiff and other hourly employees at The Fountains at Latrobe.

27. Defendant The Fountains at Latrobe Luxury lists, uses, or shares the mailing address P.O. Box 607, Indiana, Pennsylvania 15701.

28. Defendant The Fountains Group is the common brand, management identity, or umbrella business through which Defendants advertise, operate, manage, staff, and coordinate personal care and memory care facilities in Pennsylvania.

29. The Fountains Group lists, uses, or shares the mailing address P.O. Box 607, Indiana, Pennsylvania 15701.

30. Upon information and belief, The Fountains Group identifies, advertises, manages, or coordinates multiple Pennsylvania locations, including The Fountains at Latrobe, The Gardens at Latrobe, The Fountains at DuBois, The Gardens at DuBois, The Fountains at Indiana, and The Gardens at Indiana.

31. John Doe Fountains Entities 1-10 are affiliated entities, owners, operators, payroll companies, management companies, facility entities, trade names, or related businesses whose exact legal

names are unknown before discovery and that owned, operated, managed, controlled, staffed, or paid employees at Fountains and Gardens locations during the relevant period.

32. Upon information and belief, each Defendant employed Plaintiff and similarly situated employees within the meaning of the FLSA, PMWA, and WPCL.

33. Plaintiff reserves the right to amend this Complaint to identify the precise legal names of all entities that owned, operated, managed, controlled, staffed, or paid employees at the relevant Fountains and Gardens locations after discovery confirms the ownership and operational structure.

**JOINT EMPLOYER AND INTEGRATED ENTERPRISE ALLEGATIONS**

34. At all relevant times, Defendants jointly employed Plaintiff and similarly situated employees within the meaning of the FLSA, PMWA, and WPCL.

35. Defendants operated as a coordinated and integrated group of personal care and memory care businesses under common ownership, common management, common branding, common control, and centralized control of labor relations.

36. Defendants shared or coordinated employee scheduling, timekeeping, payroll, meal deduction practices, overtime practices, staffing practices, discipline, hiring, termination, and workplace policies.

37. Defendants used common or coordinated timekeeping and payroll systems, including systems that recorded shifts, meal deductions, regular hours, overtime hours, wage rates, and payroll payments for hourly employees.

38. Defendants had the power to hire and fire Plaintiff and similarly situated employees, or acted through managers, administrators, owners, or agents who exercised that authority on behalf of the Defendant enterprise.

39. Defendants supervised and controlled Plaintiff's work schedules and conditions of employment, including her shift assignments, start times, end times, coverage responsibilities, meal break practices, and pay practices.

40. Defendants determined Plaintiff's rate and method of pay, including regular hourly rates, overtime rates, pay periods, payroll deductions, and the treatment of recorded and unrecorded work time.

41. Defendants maintained, controlled, possessed, or had access to employment records, time records, payroll records, personnel records, scheduling records, and wage records for Plaintiff and similarly situated employees.

42. Plaintiff and similarly situated employees were economically dependent on Defendants collectively, not on any single nominal entity in isolation.

43. Defendants jointly benefited from the work performed by Plaintiff and similarly situated employees because their work was necessary to operate Defendants' personal care and memory care facilities.

44. To the extent any Fountains or Gardens location was technically owned, operated, managed, or staffed through a separate affiliated entity, those entities acted jointly and in concert as Plaintiff's employer and as the employers of similarly situated employees.

45. Defendants are jointly and severally liable for the wage violations alleged in this Complaint.

**FACTS SPECIFIC TO PLAINTIFF TIFFINEY GETTEMY**

46. Plaintiff worked for Defendants as an hourly, non-exempt employee at The Fountains at Latrobe.

47. Plaintiff performed work for Defendants' benefit, including resident care, resident monitoring, responding to resident needs, maintaining required facility coverage, completing assigned tasks, and related personal care facility work.

48. Plaintiff was paid an hourly rate for her work.

49. During part of her employment, Plaintiff's regular hourly rate was approximately $19.00 per hour.

50. Plaintiff's regular hourly rate later increased to approximately $21.50 per hour, and Defendants paid an overtime rate of approximately $32.25 per hour when overtime was recorded and paid.

51. Plaintiff was paid on semi-monthly or bi-monthly payroll periods, which did not consistently align with individual FLSA workweeks.

52. Plaintiff regularly worked shifts scheduled or recorded as approximately 8 hours, 12 hours, or 16 hours.

53. Plaintiff's shifts included work beginning around 6:00 a.m. and ending around 2:00 p.m., 6:00 p.m., or 10:00 p.m., depending on staffing and scheduling needs.

54. Plaintiff often clocked in before her scheduled start time, including at or around 5:45 a.m., so that she could prepare for work, receive or provide information, and ensure resident coverage.

55. Plaintiff also often clocked out after her scheduled end time, including approximately 15 minutes late, because she had to complete duties, maintain coverage, finish resident care responsibilities, or complete handoff obligations.

56. Defendants did not pay Plaintiff for all compensable pre-shift and post-shift work she performed.

57. Defendants used a timekeeping practice that automatically deducted 30-minute meal periods from Plaintiff's recorded compensable time.

58. Plaintiff usually did not receive a bona fide, uninterrupted, duty-free meal period when the 30-minute meal deduction was applied.

59. During deducted meal periods, Plaintiff was frequently required, permitted, suffered, or allowed to remain responsible for residents, remain on duty, stay available, respond to resident needs, monitor safety, perform work, or remain subject to interruption.

60. Because of resident care obligations and staffing levels, Plaintiff and other hourly employees often could not leave their duties or take a completely uninterrupted meal period.

61. Plaintiff understood that Defendants needed multiple staff members present to maintain safe and lawful resident coverage, and Plaintiff frequently could not stop working because there was nobody else available to relieve her completely.

62. Defendants knew or should have known that Plaintiff and similarly situated employees were working during automatically deducted meal periods because Defendants controlled staffing levels, resident care assignments, schedules, time records, and coverage requirements.

63. Defendants knew or should have known that automatic meal deductions were improper when employees were not completely relieved from duty for the deducted meal period.

64. Plaintiff regularly lost approximately 30 minutes per shift because of automatic meal deductions even though she did not receive a bona fide meal period.

65. Plaintiff regularly lost additional compensable time because Defendants did not pay all pre-shift and post-shift work time.

66. Together, the automatic meal deduction and unpaid pre-shift and post-shift work resulted in approximately one hour of uncompensated time per shift.

67. Plaintiff worked approximately 3 to 5 shifts per week during many weeks of her employment.

68. Plaintiff worked more than 40 hours in one or more workweeks during her employment with Defendants.

69. Defendants paid Plaintiff some overtime wages when overtime was recorded in their payroll system, but Defendants did not include all compensable hours worked in the calculation of Plaintiff's overtime pay.

70. Because Defendants failed to count all meal period work, pre-shift work, and post-shift work, Plaintiff was not paid one and one-half times her regular rate for all hours worked over 40 in a workweek.

71. Defendants' pay records and time records are in Defendants' possession and will establish the precise workweeks, unpaid hours, wage rates, overtime rates, and damages owed to Plaintiff.

72. Plaintiff's employment ended in or around June 2026.

**FACTS COMMON TO THE COLLECTIVE AND CLASS**

73. Plaintiff was not the only employee subjected to Defendants' unlawful wage practices.

74. Defendants applied the same or similar automatic meal deduction practices to other hourly, non-exempt employees, including nurses, aides, care staff, kitchen employees, housekeeping employees, and other hourly employees.

75. Upon information and belief, at least approximately 13 nurses or aides worked at the Latrobe facility, along with kitchen and housekeeping staff, for a total of approximately 18 hourly employees at that facility during the relevant period.

76. Upon information and belief, Defendants also operated or controlled additional Fountains and Gardens facilities where similar hourly employees performed resident care, kitchen, housekeeping, and facility support work.

77. The same resident care and facility coverage pressures that prevented Plaintiff from taking uninterrupted meal periods also affected similarly situated hourly employees.

78. The same timekeeping and payroll systems that automatically deducted meal periods from Plaintiff also applied to similarly situated hourly employees.

79. The same staffing and scheduling practices that caused Plaintiff to work before and after scheduled shifts also affected similarly situated hourly employees.

80. Defendants did not maintain a lawful policy or practice that ensured hourly employees were paid for all work performed during automatically deducted meal periods.

81. Defendants did not maintain a lawful policy or practice that ensured hourly employees were paid for all pre-shift and post-shift work they were required, permitted, suffered, or allowed to perform.

82. Defendants did not maintain accurate time records reflecting all compensable work performed by Plaintiff and similarly situated employees.

83. Defendants' unlawful practices were not individualized or accidental. They resulted from common timekeeping, payroll, staffing, scheduling, and meal deduction practices implemented or allowed by Defendants.

84. Defendants' own payroll records, time records, schedules, punch records, meal deduction records, employee lists, wage rates, and personnel records will identify the employees who were subjected to the same practices and will permit damages to be calculated using common proof.

## COLLECTIVE ACTION AND CLASS ACTION ALLEGATIONS

85. Plaintiff brings Count I as a collective action pursuant to 29 U.S.C. Section 216(b) on behalf of herself and all similarly situated employees.

86. The proposed FLSA Collective consists of all current and former hourly, non-exempt employees who worked for Defendants at any Fountains or Gardens personal care or memory care facility at any time within three years before the filing of this Complaint through final judgment and who were not paid for all hours worked because Defendants automatically deducted meal periods, required or allowed off-the-clock pre-shift or post-shift work, failed to include all

compensable time in overtime calculations, or otherwise failed to pay all regular and overtime wages owed.

87. Plaintiff brings Counts II and III as Rule 23 class claims under the PMWA and WPCL on behalf of herself and a Pennsylvania class of similarly situated employees.

88. The proposed Pennsylvania Class consists of all current and former hourly, non-exempt employees who worked for Defendants in Pennsylvania at any time within three years before the filing of this Complaint through final judgment and who were not paid all regular and overtime wages owed because of automatic meal deductions, off-the-clock work, pre-shift work, post-shift work, or related timekeeping and payroll practices.

89. Plaintiff and members of the FLSA Collective and Pennsylvania Class were all hourly, non-exempt employees subject to Defendants' common payroll, timekeeping, scheduling, meal deduction, and overtime practices.

90. Plaintiff and members of the FLSA Collective and Pennsylvania Class were similarly situated because they performed hourly work for Defendants, were subject to the same or similar timekeeping and payroll systems, were subject to the same or similar staffing and scheduling practices, and were subject to the same or similar automatic meal deduction practices.

91. The members of the Pennsylvania Class are so numerous that joinder is impracticable because Defendants operated multiple Pennsylvania facilities and employed multiple categories of hourly, non-exempt employees at those facilities during the relevant period.

92. The identities, addresses, phone numbers, email addresses, dates of employment, job titles, work locations, wage rates, time records, payroll records, and meal deduction records of the similarly situated employees are readily ascertainable from Defendants' records.

93. Common questions of law and fact exist as to Plaintiff and the FLSA Collective and Pennsylvania Class, including whether Defendants automatically deducted meal periods from hourly employees' compensable time, whether employees were completely relieved from duty during those meal periods, whether Defendants failed to pay for pre-shift and post-shift work, whether Defendants failed to pay all overtime wages owed, whether Defendants maintained accurate records, whether Defendants acted willfully, and the proper measure of damages.

94. Plaintiff's claims are typical of the claims of the FLSA Collective and Pennsylvania Class because Plaintiff and the collective and class members were injured by the same unlawful wage practices.

95. Plaintiff will fairly and adequately protect the interests of the FLSA Collective and Pennsylvania Class. Plaintiff has no interests adverse to the members of the collective or class and has retained counsel experienced in wage and hour litigation, collective actions, and class actions.

96. Common questions of law and fact predominate over any individualized issues because liability can be established through common evidence concerning Defendants' timekeeping systems, automatic meal deduction practices, staffing practices, payroll practices, schedules, and records.

97. A collective action and class action are superior to requiring employees to file separate lawsuits because the claims arise from common policies and common records, the damages for many employees may be too small to justify separate litigation, and separate lawsuits would create unnecessary expense and inconsistent results.

98. Without collective and class treatment, Defendants will retain the benefit of their unlawful wage practices and many employees will be unable to vindicate their rights.

**COUNT I**
**Collective Action Under the Fair Labor Standards Act**

99. The preceding paragraphs are incorporated by reference.

100. Plaintiff brings this claim individually and as a collective action pursuant to 29 U.S.C. Section 216(b).

101. Defendants were Plaintiff's employers within the meaning of the FLSA.

102. Defendants were the employers of the similarly situated employees within the meaning of the FLSA.

103. Plaintiff and the similarly situated employees were employees within the meaning of the FLSA.

104. Plaintiff and the similarly situated employees were non-exempt employees entitled to overtime compensation under the FLSA.

105. Defendants required, permitted, suffered, or allowed Plaintiff and similarly situated employees to work more than 40 hours in one or more workweeks.

106. Defendants failed to pay Plaintiff and similarly situated employees one and one-half times their regular rates of pay for all hours worked over 40 in a workweek.

107. Defendants failed to pay Plaintiff and similarly situated employees for compensable work performed during automatically deducted meal periods.

108. Defendants failed to pay Plaintiff and similarly situated employees for compensable pre-shift and post-shift work.

109. Defendants failed to include all compensable hours worked when calculating overtime compensation owed to Plaintiff and similarly situated employees.

110. Defendants failed to keep accurate records of all hours worked by Plaintiff and similarly situated employees.

111. Defendants knew or should have known that Plaintiff and similarly situated employees performed work for which they were not fully paid.

112. Defendants' violations of the FLSA were willful because Defendants knew about their timekeeping, staffing, scheduling, meal deduction, and payroll practices, knew or should have known that employees were working through deducted meal periods and outside recorded shift times, and nevertheless failed to pay all wages and overtime wages owed.

113. As a result of Defendants' violations, Plaintiff and similarly situated employees are entitled to unpaid wages, unpaid overtime wages, liquidated damages, attorney fees, costs, interest, and all other relief available under the FLSA.

**COUNT II**
**Class Action Under the Pennsylvania Minimum Wage Act**

114. The preceding paragraphs are incorporated by reference.

115. Plaintiff brings this claim individually and as a Rule 23 class action on behalf of the Pennsylvania Class.

116. Defendants were Plaintiff's employers within the meaning of the PMWA.

117. Defendants were the employers of members of the Pennsylvania Class within the meaning of the PMWA.

118. Plaintiff and members of the Pennsylvania Class were non-exempt employees entitled to minimum wage and overtime protections under the PMWA.

119. Defendants required, permitted, suffered, or allowed Plaintiff and members of the Pennsylvania Class to perform compensable work for which they were not fully paid.

120. Defendants required, permitted, suffered, or allowed Plaintiff and members of the Pennsylvania Class to work more than 40 hours in one or more workweeks.

121. Defendants failed to pay Plaintiff and members of the Pennsylvania Class one and one-half times their regular rates of pay for all hours worked over 40 in a workweek.

122. Defendants failed to pay Plaintiff and members of the Pennsylvania Class for compensable work performed during automatically deducted meal periods.

123. Defendants failed to pay Plaintiff and members of the Pennsylvania Class for compensable pre-shift and post-shift work.

124. Defendants failed to maintain accurate time and payroll records reflecting all hours worked by Plaintiff and members of the Pennsylvania Class.

125. Defendants' violations of the PMWA were willful and caused Plaintiff and members of the Pennsylvania Class to suffer damages.

126. Plaintiff and members of the Pennsylvania Class are entitled to unpaid regular wages, unpaid overtime wages, liquidated damages, attorney fees, costs, interest, and all other relief available under the PMWA.

**COUNT III**
**Class Action Under the Pennsylvania Wage Payment and Collection Law**

127. The preceding paragraphs are incorporated by reference.

128. Plaintiff brings this claim individually and as a Rule 23 class action on behalf of the Pennsylvania Class.

129. Plaintiff and members of the Pennsylvania Class had an agreement or understanding with Defendants that they would be paid hourly wages for the time they worked.

130. Wages, including overtime wages, became due and payable to Plaintiff and members of the Pennsylvania Class under their employment relationship with Defendants.

131. Defendants failed to pay Plaintiff and members of the Pennsylvania Class all wages due and owing, including wages for hours worked during automatically deducted meal periods, pre-shift work, post-shift work, and other compensable work time that Defendants failed to record or pay.

132. Defendants' failure to pay wages due violated the WPCL.

133. Plaintiff and members of the Pennsylvania Class are entitled to unpaid wages, statutory liquidated damages, attorney fees, costs, interest, and all other relief available under the WPCL.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Tiffiney Gettemy respectfully requests that this Court enter judgment in favor of Plaintiff and all similarly situated employees and against Defendants, and award the following relief:

a. Conditional certification of Count I as an FLSA collective action under 29 U.S.C. Section 216(b);

b. Approval of notice to all similarly situated employees, including production of names, addresses, phone numbers, email addresses, dates of employment, job titles, work locations, wage rates, payroll records, time records, and meal deduction records;

c. Certification of Counts II and III as Rule 23 class claims;

d. Unpaid regular wages and unpaid overtime wages;

e. Liquidated damages under the FLSA and PMWA;

f. Liquidated damages under the WPCL in the amount of 25% of unpaid wages or $500 per class member, whichever is greater;

g. Prejudgment and post-judgment interest;

h. Attorney fees and costs;

i. A declaratory judgment that Defendants' wage practices violated federal and Pennsylvania law; and

j. Any other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,

David M. Manes, Esq.
PA ID No. 314661
**MANES & NARAHARI, LLC**
One Oxford Centre
301 Grant St, Suite 270
Pittsburgh, PA 15219
(412) 626-5570 Direct
(412) 650-4845 Fax
dm@manesnarahari.com

Counsel for Plaintiff and the
Proposed Collective and Class

**VERIFICATION**

I, Tiffiney Gettemy, make this verification and state that the averments of fact set forth in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements therein are made subject to the penalty of perjury under the laws of the United States of America.



_____
Tiffiney Gettemy